UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE HARPER COMPANY<br>1648 Petersburg Road<br>P.O. Box 420<br>Hebron, KY 41048<br><br>   Plaintiff,<br><br>vs.<br><br>CENTRAL STATES, SOUTHEAST<br>AND SOUTHWEST AREAS<br>HEALTH AND WELFARE<br>AND PENSION FUNDS<br>9377 West Higgins Road<br>Rosemont, IL 60018<br><br>   Defendant. | CASE No.:<br><br>JUDGE<br><br><br>FILED: AUGUST 15, 2008<br>08CV4655<br>JUDGE GUZMAN<br>MAGISTRATE JUDGE ASHMAN<br>YM |

## COMPLAINT

NOW COMES The Harper Company ("Harper"), by and through its undersigned counsel, and states as its Complaint against Defendant Central States, Southeast and Southwest Areas Pension Fund ("Central States").

### Jurisdiction and Venue

1. This is an action to vacate or modify an arbitration award issued under Section 4221(b)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. § 1401(b)(2).

2. This Court has jurisdiction over this action pursuant to ERISA Sections 4221(b)(2) and 4301(c), 29 U.S.C. §§ 1401(b)(2) and 1451(c).

3. Venue lies in this Court under ERISA Sections 502(e)(2), 4221(b)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2), 1401(b)(2) and 1451(d), because the Central States, Southeast and Southwest Areas Pension Fund is administered at its principal place of business located in Rosemont, Cook County, Illinois. Venue is also proper in this district pursuant to the terms of Appendix E to the Central States Pension Plan.

### Parties

4. Defendant the Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") is a multiemployer pension plan within the meaning of ERISA Sections 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Harper is a corporation organized under the laws of the State of Ohio.

### Claim for Relief

6. Harper was obligated to contribute to the Pension Fund pursuant to a series of collective bargaining agreements executed between itself and Teamsters Local Union 100, and a Project Agreement with Teamsters Local Union 89.

7. Pursuant to the collective bargaining agreements Harper was required to make weekly pension contributions to the Pension Fund on behalf of certain of its employees.

8. The Pension Fund determined that Harper had effected a partial withdrawal from the Pension Fund within the meaning of ERISA Section 4203, 29 U.S.C. § 1381.

9. On or about May 17, 2006, Harper received from the Pension Fund a Notice and Demand for Payment of Withdrawal Liability pursuant to ERISA Sections 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1).

10. By letter dated July 20, 2006, Harper requested that the Pension Fund review its withdrawal liability determination pursuant to ERISA Section 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A).

11. On February 13, 2007, Harper initiated arbitration of the Pension Fund's withdrawal liability assessment in accordance with ERISA Section 4221, 29 U.S.C. § 1401, with the Chicago Regional Office of the American Arbitration Association ("AAA") in *The Harper Company and Central States, Southeast and Southwest Areas Pension Fund,* Arbitration No. 51 621 00276 07 (the "Arbitration").

12. The Arbitration was administered by the AAA in Chicago, Illinois, before Arbitrator Thomas F. Levak, who had been selected by agreement of the Pension Fund and Harper to hear the case.

13. On June 10, 2008, the Pension Fund and Harper filed Motions for Summary Judgment.

14. In an award and decision dated July 20, 2008 (the "Decision"), Arbitrator Levak denied Harper's Motion for Summary Judgment and granted the Pension Fund's Motion for Summary Judgment finding that Harper did not qualify for the building and construction industry exemption set forth in ERISA Section 4203(b)(1)(A), 29 U.S.C. § 1383(b)(1)(A). A copy of the Decision is attached hereto as Exhibit A.

15. The Arbitrator's legal determination that Harper did not qualify for the building and construction industry exemption is erroneous and contrary to law.

WHEREFORE, Harper requests that this Court enter an order vacating the arbitration award and enters judgment in favor of Harper as follows:

A. The building and construction industry exemption set forth in 29 U.S.C. §1383(b) applies to Harper to eliminate its withdrawal liability to Central States;

B. Central States must return to Harper all withdrawal liability payments made by Harper to Central States, with interest; and

C. Harper's costs, fees, and other such relief this Court deems just and proper.

Respectfully Submitted,

s/ Heather A. Bailey
Heather Bailey, Esq.
Drinker Biddle & Reath LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
E-mail: Heather.Bailey@dbr.com

Scott A. Lefelar, Esq. (*pro hac vice* pending)
Millisor & Nobil Co., L.P.A.
9150 South Hills Blvd., Suite 300
Cleveland, OH 44147
(440) 838-8800 – Telephone
(440) 838-8805 – Telecopier
E-mail: slefelar@millisor.com

Attorneys for Plaintiff,
The Harper Company

Dated: August 15, 2008

4

# EXHIBIT A

```
08CV4655
JUDGE GUZMAN
MAGISTRATE JUDGE ASHMAN
YM
```

AMERICAN ARBITRATION ASSOCIATION
Michigan Labor Center

In the Matter of

| | |
|---|---|
| THE HARPER COMPANY,<br>Hebron Kentucky | AAA No. 51 621 00276 07 |
| The Employer | ERISA/MPPAA WITHDRAWAL<br>LIABILITY DISPUTE |
| and | |
| CENTRAL STATES, SOUTHWEST<br>AND SOUTHWEST AREAS PENSION<br>FUND | ORDER AND AWARD OF<br>SUMMARY JUDGMENT |
| The Fund | |

The Fund is a multi-employer pension plan, as defined by ERISA, 29 USC § 1002(37)(A), and is primarily funded by contributions from participating employers who are signatory to collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters. The Employer is an Ohio corporation with its principal place of business in Hebron, Kentucky. This matter, which was submitted to the Arbitrator by AAA on April 12, 2007, concerns a May 17, 2006 Notice and Demand for Payment of Withdrawal Liability, Assessment No. 3511050-WL060043-01, Withdrawn Account No. 3511050-0309. During 2001 through 2004, the Employer experienced a 70% decline in participation in the Fund. As a result, the Fund determined that, as a result of its partial withdrawal, the Employer incurred withdrawal liability, as of December 31, 2004, in the amount of $100,624.22. The parties' dispute primarily concerns whether the Employer is a "building and construction industry" employer that is exempt from partial withdrawal liability under the exception set forth in the 1980 MPPAA amendments to ERISA, 29 USC §§ 1381-1461, and specifically 29 USC § 1383(b).

The parties stipulated that this matter would be determined through the resolution of motions for summary judgment filed by both parties, without hearing,

with both parties filing written briefs. The Fund was represented by Timothy C. Reuter and the Employer by Jeffrey D. Smith of Millisor & Nobil. On July 3, 2008, the Arbitrator received the parties' opening briefs and reply briefs.

Based upon the evidence supplied the Arbitrator—including the discovery materials, which the Arbitrator carefully examined—the arguments of the parties, and an application of governing law thereto, the Arbitrator finds, orders and awards that the Fund's motion for summary judgment is granted and that the Employer's motion for summary judgment is denied. The following is the Arbitrator's rationale.

MPPAA imposes withdrawal liability measured as an employer's proportionate share of a plan's unfunded vested benefits, which is the difference between the present value of the vested benefits and the current value of a plan's assets. *Connolly v. PBGC*, 475 US 211 (1986); 29 USC §§ 1381, 1391. In addition, partial withdrawal liability is assessed against an employer who has experienced a 70% decline in contributions. 29 USC § 1385(b)(1)(A). Under certain circumstances, however, 29 USC § 1388(d)(1) excuses an employer in the building and construction industry from a partial withdrawal liability assessment. To qualify for the exception an employer must establish that "substantially all" of the employees for whom it contributed to a fund were building and construction industry employees. In *Central States Pension Fund v. Robinson Cartage Co.*, 55 F3rd 1318 (7 Cir 1995), the court defined that term to mean 85% or more. Moreover, in *Union Asphalts and Roadoils, Inc. v. Mo-Kan Teamsters Pension Fund*, 857 F2d 1230 (8Cir 1988), the court, analyzing building and construction industry decisions issued by the National Labor Relations Board ("NLRB"), held that, at a minimum, some "significant involvement on the construction site" generally is required, and that the mere transportation of materials to and from a site does not qualify for the exemption. *See, In re Todesca Corp.*, 1996 WL 138068 (NLRBBGC 1996). As the Fund argues, the focus of any inquiry is not upon the industry of an employer but, rather, upon the employees involved. *See, Oregon-Washington Carpenters-Employers Pension Trust Fund v. BQC Construction Inc.*, 485 F Supp 2d 1206 (D Ore 2007).

For the period of 1997 through 2004, the Employer's total number of contribution base units were 94,652.5, and its construction related contribution base units were 73,190. The following is a breakdown of the reported base units for that period:

| Year | Contstru. CBUs | Non-Constru CBUs | % Constru CBUs |
|------|---------------|------------------|----------------|
| 1997 | 13,962 | 2,118.5 | 87% |
| 1998 | 29,744 | 2,857 | 91% |
| 1999 | 14,492 | 2,238.5 | 87% |
| 2000 | 4,728 | 3,914.5 | 55% |
| 2001 | 2,665 | 2,710.5 | 50% |
| 2002 | 1,812.5 | 2,957.5 | 38% |
| 2003 | 2,903 | 2,227.5 | 51% |
| 2004 | 2,883.5 | 2,438.5 | 54% |
| | Yearly Average: | | 64% |

As the Fund cogently notes, the Employer's average of 64% construction related contribution base units does not meet the "substantially all" 85% requirement, a requirement that the Employer also failed to meet in five of the eight years.

Much of this dispute focuses on work performed by the Employer's lowboy drivers. The Employer contributes to the Fund on behalf of employees classified as batch truck drivers, water truck drivers, lowboy drivers, pickup drivers, boom truck drivers, fuel truck drivers and "other." A lowboy is a trailer used to haul heavy equipment over the road to and from an Employer construction site. Since 1997, there have always been Employer employees driving lowboys, and lowboy drivers have represented more contribution base units than any other classification. Lowboy drivers have spent little time on the sites and rarely have parked their lowboys there. They have spent almost all of their time on the road, taking only a few minutes to load or unload equipment at a job site.

The Employer argues, in part, that lowboy drivers are performing construction work because they are delivering equipment, rather than materials, such as sand and gravel. The Arbitrator finds that the reported decisions make no distinction between equipment and materials.

The Employer further argues that it has satisfied the "substantially all" test because only three employees were lowboy drivers and that over 90% of its overall employee complement were performing building and construction industry work. That argument also fails because, as noted in *Robinson Cartage*, the proper

methodology is to analyze the contribution base units represented by each job classification.

Thus, even assuming that all of the Employer's employees other than lowboy drivers were performing work in the building and construction industry, the total number of contribution base units represented by those other employees fell short of the 85% required by the "substantially all" test, no matter how the numbers are broken down. Accordingly, the Employer's motion for summary judgment must be denied and the Fund's motion for summary judgment must be granted.

Dated this 20th day of July, 2008,

Thomas F. Levak, Arbitrator,
Happy Valley, Oregon.